for today will be 23-10858 Howard v. Coonrod You saved three minutes for rebuttal Ms. Levick. Thank you. Good morning ladies of the court. My name is Marsha Levick and I'm here on behalf of the plaintiff class members. We are here appealing the grant of summary judgment to defendant commissioners, members of the Florida Commission on Offender Review and the relief that we see from this court is a reversal of the grant of summary judgment to defendants as well as a declaration that the parole procedures and processes in Florida violate plaintiff's Eighth Amendment and Fourteenth Amendment rights and of course a remand to the district court for further proceedings consistent with that ruling. The claim before this court is essentially about plaintiff's constitutional rights. Those rights all derive from a series of United States Supreme Court cases decided between 2005 and 2020. And those cases just so I can sort of set the table distinguish between homicide offenders and non-homicide offenders right and there we have both in this class which is a little weird. They're almost all homicide individuals. I think we might only have one class member who has both a Graham claim non-homicide claim as well as a homicide claim. But you agree that there are it's a different analysis for homicide versus non-homicide juveniles? Actually no. I think that both there are cases that deal with both homicide and non-homicide. The Supreme Court in Graham of course was only dealing with non-homicide offenders. When the Supreme Court decided Miller and then ruled it retroactive in Montgomery the court was quite clear that in fact the science that dictated their holding in Graham that we treat children differently was exactly the same for children who were convicted of homicide and also facing life parole sentences. So I'm glad that you asked that question because I think it's really important to just be very clear that the Supreme Court case law makes no distinction. So what is the standard then that you think applies to both groups? So the standard is that children who are convicted of homicide crimes or non-homicide crimes under the age of 18 cannot serve a life without parole sentence may not be sentenced to die in prison unless their crimes reflect only transient immaturity and that has been repeated by the Supreme Court in Miller Montgomery and Jones. Additionally the other piece of that standard is that when in before such a sentence can be imposed the court must provide a sentence that allows for the opportunity a meaningful opportunity that's operative words here a meaningful opportunity for that individual to demonstrate growth and maturity. So I think I tend to the reason that I read the Supreme Court decisions is distinguishing between the two groups is because I think it's hard to read I agree with you that Graham suggests that with respect to non-homicide offenders there is this meaningful opportunity to demonstrate you know reform but with respect to homicide offenders I think it's hard to say that that meaningful opportunity standard applies to that group there's the sort of the vague cf citation in is it Montgomery maybe but Jones comes along behind Montgomery and to me seems to close that door and suggest that all that's really required for with respect to homicide offenders is that it be a mandatory system that there be some discretion built into the system and that that discretion is not a sham. Okay so I'll answer yeah okay so yeah this is a Justice Breyer question there's my position please react. Okay so I disagree and I actually think that the case law is pretty clear when you read Justice Kennedy's decision in Montgomery where he is ruling of uh the the conclusion of his opinion in ruling that the end result here is that individuals who are convicted of homicide the way that states can correct that unconstitutional life without parole sentence is either through a judicial resentencing or through parole that's very clearly said by Justice Kennedy and additionally we have to read the next sentence which I feel like everybody who involved in this case on the other side ignore the other sentence in that paragraph is that the reason why parole is an acceptable alternative to judicial resentencing is because it has to provide the opportunity to ensure that those individuals have an opportunity to demonstrate growth and maturity so I don't see how there's any reason to see any daylight between how the process would for individuals who are Graham cases so to speak and those who are Miller cases and let me also speak to the Jones issue I actually disagree with the um the sort of narrow reading of Jones I think that Jones is actually uh another uh case in which the Supreme Court has provided incredibly robust support for its holdings in Graham, Miller, and Montgomery and I will be very clear about how the court does that. First of all we have to recognize in Jones that um I'm going to draw a distinction between discretionary discretion and mandatory discretion and I think that the defense and I think the district court is reading Jones as permitting discretionary discretion so long as you can consider youth you've met the constitutional requirement that's not at all what Jones requires Justice Kavanaugh was very clear that Jones is a mandatory requirement that a court exercises discretion to consider youth how it considers youth is a discretionary part of that ruling and let me explain how clear that is in three footnotes that are appended to the Jones decision footnote number two Justice Kavanaugh is very clear that any sentence that is meted out to a juvenile offender that requires them to essentially serve a life in prison would be unconstitutional if it was in if in fact their crime reflected transient immaturity that would be disproportionate unconstitutionally disproportionate under the eighth amendment footnote number six Justice Kavanaugh also said that in a case where counsel failed to provide the proper mitigating evidence about youth and all of its attendant characteristics that would be grounds for an ineffective assistance of counsel and footnote number seven Justice Kavanaugh also said that if the court refused to consider the mitigating characteristics of youth that would be grounds for an independent eighth amendment claim so I think that Kavanaugh breathes life into exactly what Miller and Montgomery required again I think there's no daylight between individuals who are either facing non-homicide crimes or homicide and the requirement and the allowance for parole as an alternative way to remedy the unconstitutional sentence has to carry with it the same requirements that these individuals and again this is clearly stated in Montgomery they must have an opportunity to demonstrate growth and maturity that is tied into the meaningful opportunity to achieve release the meaningful opportunity for release by demonstrating growth and maturity but so when Jones describes the holding of Miller as a prohibition on a mandatory system why should we think that Miller then sort of radiates beyond that even despite suggestions in Montgomery if Jones sort of it seems to me reads Miller narrowly maybe you think fairly or unfairly but it seems to say like let's return to sort of like the core issue in Miller it was about mandatory systems so as I said I don't think you can read it narrowly again here I'll point again to the footnote footnote two but Justice Kavanaugh doesn't let go of number one he very clearly says he's not reversing Miller and Montgomery so I think we have to take him at word whatever Miller and Montgomery hold that is still good law today but of course what he says Miller holds is a prohibition on a mandatory system right but it holds much more than that because Miller well I guess it may but Justice but Justice Kavanaugh and Jones characterizes Miller's holding as a prohibition on a mandatory system but he also says isn't he really cabining what Miller stands for in Montgomery isn't he really cabining what Miller stands for in Montgomery I don't think so because and I what I think that Justice Kavanaugh is saying it's not what I think I believe what Justice Kavanaugh is saying is he is saying that what Miller what the issue before the Supreme Court in Jones was whether or not the court was required to make a specific finding of permanent incorrigibility before it could in fact impose a life without parole sentence a discretionary life without parole sentence Justice Kavanaugh rejected that assertion it was very clear that no specific finding is required however Justice Kavanaugh also said while rejecting the specific finding of permanent incorrigibility he was unequivocal in ruling that a sentence that was imposed on an individual whose crime reflected only transient immaturity would be disproportionate under the eighth amendment so I do not believe that Justice Kavanaugh has forsaken the elements of the Miller and Montgomery decisions that do do more than simply prohibit a mandatory life without parole sentence he retains this notion of line drawing he doesn't require a finding I'm not going to argue with that but he retains the notion of line drawing I think unequivocally so again I think that we we can't treat these opinions separately I would also note that in terms of the precedent that is out there my time is really getting low here time flies when you're having fun I think that the most courts have ruled of course that these cases do apply in this instance I will reference the panel of this circuit this court in the Moore v. Georgia case which characterized the fourth and eighth amendment circuit opinions going in the opposite opposite direction as to an extent going in the opposite direction and that is because of course they then went ahead and assessed the constitutionality of the parole procedures in those cases but the vast majority of case law of course has gone the other way the 10th circuit has gone the other way I really feel like I'm running out of time there are so many things that are wrong with the parole system here that I want to call out for the court obviously these are all in our brief but the point is that I think the language that we see in these other cases is that there's kind of a sham standard is the parole process a sham or not and our position unequivocally is the parole process in Florida is a sham how can you say that though I mean given the sorry but maybe we're about to ask the exact same question how can you say that that given like even in the Atwell window you had people released to our we had a two-year period in the state of Florida where during Atwell 98 people were released 98 juveniles that was not a parole process that was a judicial review process I understand that but even during the parole process you can't say that people have not been paroled there are 22 people have been paroled in 12 years out of the class so that's approximately two people a year the standard in Miller in Montgomery is that being sentenced to die in prison should be a rare and uncommon occurrence what we have in Florida is the individuals who are serving life sentences are the rare and uncommon crowd I can I continue it's a really you'll be eating into your rebuttal time if you continue so your choice I'm gonna go a couple more minutes if I can I because I want to say it's a sham I think we do have to understand how it operates what the district court said and what the defendants argue is all is good here defendants are eligible for parole after 25 years that is absolutely not correct defendants are our class the defendants as in criminal defendants our class members when they serve 25 years when they hit the minimum of their 25 to life sentence they are not eligible for parole they are eligible for an initial hearing where the parole commissioners will set their presumptive parole release date in every one of our class members cases that presumptive parole release date has been set 40 years ahead of their minimum 25 year sentence the reason for that is because the system in Florida uses a matrix that looks at the severity of the offense it's a youthful matrix correct there the matrix that they that they use with these individuals considers it based on youthfulness as opposed to an adult matrix because adults have a different matrix yes and no to your answer 93 of our 170 class members never had the youth matrix applied to them so that those members of a class have never throughout the history of their involvement in the Florida prison system had their youth considered as required by Miller and Montgomery the other individuals who did have youth considered under the Florida matrix that was amended and revised in 2014 after the Miller decision came down actually uses a very curious way of characterizing youth what the language in that matrix now provides is that the commissioners may consider whether or not the individual was so young as to not understand the seriousness and consequences of their conduct that is not the standard that the court has the Supreme Court has articulated regarding youth in Graham, Miller, Montgomery, Jones, or Roper in which the Supreme Court characterized all youth under the age of 18 those characters that the act the act of being a person under 18 is a mitigating factor not whether they were so young as to etc the other important point that I want to point out here and then I will sit down is that the the defendants stipulated this is so important the defendants have stipulated in the findings of fact leading to the summary judgment motions that they are not familiar with the Supreme Court cases and they are not familiar with the underlying science that drove those cases so even though there is this repeated assertion we consider youth we consider youth we consider youth the defendants do not know how to consider youth as the Supreme Court requires them to do so thank you thank you Mr. D'Souza good morning your honors and may it please the court Jeffrey D'Souza for the Florida Commission on Offender Review good to be with you this morning so I'd like to pick up on the court's line of questions about the important difference that the Supreme Court has drawn between juveniles who commit murder and those who commit non-homicide offenses because you know I think Graham is very clear that it's drawing a line between those categories of offenders because of the important difference between those crimes in a moral sense the Supreme Court pointed out the severity and irrevocability of homicide offenses as being distinct from non-homicide offenses so let me ask you this I think I tend to agree with you that the precedent draws this line with respect to the meaningful opportunity standard I think you have agreed that with respect to non-homicide offenders that's the standard that applies correct okay explain to me then why with respect to the non-homicide offenders the Florida system provides that meaningful opportunity sure so it does so because there's no question and the parties stipulated below that youth is considered by the commissioners and one thing I might like sort of prompt you to discuss in in relation to a question that Judge Lagoa asked your colleague on the other side is this youth matrix as I understand like came online in the middle of the class period right so you've got some who got who got the benefit of that some who didn't and that might for the ones who got the benefit of it that might be some evidence that there's a meaningful opportunity to demonstrate reform but what about with respect to the others yeah so Judge Newsom we don't rely exclusively on the youthful offender matrix it's certainly helpful with respect to those who got their pprds after 2014 of course and I think it makes it very difficult for that category of offenders to have any argument about youth not being considered in a meaningful way as to everybody else it's true that there are those before 2014 didn't get the of the matrix but the there's no question that the commissioner said they nevertheless do consider youth so if you consider what Commissioner Coonrod said she said irrespective of the matrix I consider youth at every stage throughout the process not just when setting the initial pprd but also at that subsequent Mr. D'Souza may I ask you a question this goes to Judge Newsom's question but my understanding is that the parole process in Florida has four stages you have the initial interview that normally you get when it's the end of your minimum mandatory sentence correct and you have an individual an investigator who comes and evaluates the inmates records meets with the inmates and does this initial interview and explains what the salient factor score will be and recommendation as to and allows the inmate to dispute any errors correct yes and then you go from there you go to the the second stage which is subsequent interviews which is when you get the the pprd that the commission determines uh no I'm not sure about that actually so there's a pprd that's done after the the initial interview okay of course makes an initial determination and by the way critically that initial determination is itself Judge Lagoa a parole determination what happens when the when what happens when the pprd is first set is that the commission looks at all the facts of the case including youth and prospects for rehabilitation and whether there's been rehabilitation and they say if they set the pprd off two decades in the future they say we don't think you're rehabilitated right now now the commission testified and there's no dispute about this that a pprd at that initial stage can be set immediately and so you know a big part of my friend's argument is that you know they have an expert dr kaufman who says well pprds are often set many years into the future and and their argument is as a result our clients never get an opportunity to be considered for parole and that is I think demonstrably false they're misunderstanding what happens when f core sets the pprds that pprd determination is a parole determination it reflects the fact that that person has not yet been rehabilitated it is not fit to reenter society if that's all that our system provided we think that that would be graham's meaningful opportunity for release but as your honor was getting at that's not all that our system provides because by statute and by rule the subsequent interviews are held for the rest of the offender's life at intervals between one and seven years and f core has the discretion in terms of when it sets those subsequent interviews and those subsequent our motion for summary judgment just a smattering of examples of individuals who had originally very lengthy pprds set where at subsequent interviews they received pprds immediately and had effective release dates and they were paroled and those reductions were something like 20 years from the original pprds and so I think that that shows that our our process is working and the statistics bear that out so the plaintiffs say that that 24 figure only 24 individuals paroled since 2012 is a figure that's in their favor we think exactly the opposite if you just were to look at those statistics and we think they don't tell the full story but if you were to just look at those statistics that's in line with what other courts of appeals have said is a mean is indicative of a meaningful opportunity for release so the en banc eighth circuit in the brown case said that there was a properly functioning missouri parole board when four out of 28 were released and those percentages are roughly equivalent now in point of fact we think that the 24 doesn't tell the full story for a couple of reasons as the district court correctly ruled the existence of the at well window does tell us something here because many offenders were released at those judicial resentencings during the at well window they otherwise would have been members of the class and i think it is fair to infer that at least some of them you know perhaps not all 98 of them but at least some of them would have been paroled the second thing that i'll say is that there was no dispute below that there were it was something like 49 or 50 inmates who are juvenile lifers so serving life with parole in our system but were not members of the class and the reason for that was because they were previously paroled and then re-offended so i don't think you can simply ignore those 49 offenders because they had an opportunity as well and they are members of the class currently they are not members of the class and the only reason that they're not members of the class is because the class was limited to those who had not yet been paroled so are the plaintiffs correct that there's nothing formalized into the parole process that requires the consideration or even suggests the consideration of things like maturity and rehabilitation yeah i'm not sure that there is i'm not sure that there is a mandate in f core's rules that say well even aside from a mandate is there is there anything in writing or anything in the policy that says you will you should consider these things so there is a rule about mitigating factors and my friend read it out loud that explicitly says that youthfulness young age and diminished capacity is relevant as well but youthfulness i see that as somewhat different from rehabilitation um maybe not maturity but from rehabilitation what you've done since you've been in the system to show that you've matured and changed two answers prior the first one is based on the undisputed facts all of the commissioners said that they consider things like youth so even if there is not some requirement in our law that you consider youth and rehabilitation they're doing that and so i'd be happy to quote to you from what commission kuna said she said for instance their age impulsiveness have they been committing disciplinary reports have they gone away from that are they engaging in programs do their custody levels change are their work performances improving are they educating themselves i personally review all of those she went on to say i consider age throughout the entire review of the record not just the initial every time i score the case age is always considered so that's the first point just based on the facts the second point is a rebuttal to what they say in their brief about a provision of our statutory law section 947.002 sub 2 which talks about primary weight being given to the seriousness of the offense so what they're trying to say there i think is that the legislature has said look first and foremost at how severe the offense is but if you look at our scheme in totality i think what emerges is that the legislature wants the wants to be sort of using as its north star the question of rehabilitation because in the in the very same provision it talks about the reason that seriousness of the offense is considered with primary weight and that's because traditionally it's been the best indicator of the likelihood of recidivism but when you broaden your gaze and sort of look at the other statute so this is section 947.165 sub 1 our legislature instructed f core to come up with parole guidelines that quote shall be based on the seriousness of offense and the likelihood of favorable parole outcomes i think so rehabilitation emerges as a critical consideration because after all favorable parole outcomes are all about whether you've been rehabilitated and are fit to reenter society another statutory provision is section 947.18 no person shall be placed on parole until and unless the commission finds that there is a reasonable probability that he will live and conduct himself as a respectable and law-abiding person so there again rehabilitation is sort of core to our statutory scheme so we think both as a matter of fact and as a matter of law our parole system makes rehabilitation a critical consideration and that's that's borne out by the numbers here so unless the court has any further questions for me i'll simply ask the court to thank you thank you miss levick i'm going to give you a short amount of time that's over but um to give her two minutes okay i'm going to talk fast um let me say first of all the first sentence in the provision that uh my opposing counsel just read 947 18 which he did not read to you is no person shall be placed on parole merely as a reward for good conduct or efficient performance of duties performed in prison that's a really important sentence because what the commissioners uniformly testified to at their depositions is that when individuals have good discipline records in prison the members of our class that is not considered mitigating it is not considered mitigating that's what they're supposed to do so there is no mitigation recognized for the fact that they have good records and are doing well in prison number two the defendants have conceded that all of our class members have been pushed back seven years although the statute provides for one two or seven years they have all been pushed back seven years for all of their hearings number three at the subsequent hearing the initial hearing is where the matrix comes into play at the subsequent hearing the matrix is not in play the only thing that can be considered at this each subsequent hearing every seven years is new information it is not about the matrix anymore there is absolutely no requirement as justice judge prior you recognized there is no requirement that youth be considered i think that's a striking and incredibly fundamental issue here there is no requirement that youth be considered under the florida parole system and the fact that the commissioner say we consider youth i submit to you is belied by the fact that they don't know what they're considering there is no dispute that they don't know the cases and they don't know the science that underlies those cases we also know based upon the record in this case that every one of our class members received a minimum average of 47 additional years attached to their sentence we know that of the 21 members of our class who in fact hit their pprds so they finally got to that point in those 21 cases in four of the cases the investigator recommended parole parole was denied by the florida commissioners and in the so in the entire bulk of those 21 cases all of those individuals had their pprds pushed back and they are serving anywhere between another 15 and 25 years past when the initial pprd thank you miss levick we've got your argument court will be in recess until 9 a.m tomorrow morning